# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Case No. 11-cr-779-6 |
| TRACY CONLEY, ) | |
| ) | |
| Defendant. ) | Judge Sharon Johnson Coleman |
| ) | |

## MEMORANDUM OPINION AND ORDER

On January 24, 2014, a jury convicted defendant Tracy Conley of four charges: (1) conspiracy to possess with intent to distribute five kilograms or more of mixtures containing cocaine; (2) attempt to possess with intent to distribute five kilograms or more of mixtures containing cocaine; (3) possession of a firearm in furtherance of a drug trafficking crime; and (4) unlawful possession of a firearm. Pursuant to Federal Rules of Criminal Procedure 29 and 33, Conley moves for a judgment of acquittal or, alternatively, for a new trial [373, Amended at 387].[1] This Court heard oral arguments on the motion on December 18, 2014. After a thorough review of the trial transcript, the parties' briefs and arguments, including Tracy Conley's own post-trial submissions, the Court denies the motion.

**Background**

The following facts were adduced at the jury trial held in this matter. On October 31, 2011, brothers Myreon and David Flowers met with their cousin Anwar Trapp for the purpose of planning a robbery of a drug stash house. At that meeting the cousins discussed recruiting Anthony Adams for the

---

[1] Conley's trial counsel filed two post-trial motions on Conley's behalf [270, 271]. Subsequently, Conley filed a motion for new counsel, which was granted based on the Court's understanding that trial counsel and Conley were unable to continue an attorney-client relationship due to differences of opinion as to Conley's defense. The Court appointed Preston Pugh of Pugh, Jones & Johnson, P.C., later substituted by Stephen H. Pugh, to represent Conley and thanks Mr. Pugh and his law firm for their service and thorough advocacy on behalf of Conley. The Court granted Mr. Pugh leave to supplement the post-trial motions. Throughout the post-trial proceedings, Conley has filed letters in his own defense.

1

scheme. On November 1, 2011, Anwar Trapp, Myreon and David Flowers met Anthony Adams in the basement of Adams' house. Later that same day, Trapp, David Flowers, and Anthony Adams picked up Tracy Conley and went back to Adams' basement. Anwar Trapp testified that at this meeting Myreon Flowers told them about the robbery, and discussed, according to Trapp, that Anthony Adams, Tracy Conley, and a third person would commit the actual robbery. There is no testimony in the record that weapons were discussed at this meeting.

Upon his arrest, Conley provided a statement to law enforcement. In that statement, Conley said that he had gone to work that morning, but was sent home early. He did not have enough money to purchase gas for his car so he agreed to help his friend Anthony Adams clean an apartment. Anthony Adams picked Conley up and they went to Adams' basement where they smoked marijuana and cigarettes and discussed the cleaning job, including raking leaves and cleaning gutters. Later that day, Conley, Adams, and Rudy Space drove to an address on Mozart (which turned out to be David Flowers' home), and entered a white work van. They then drove to a Forest Preserve and, according to Conley's statement, "he handed him a tool case." All of the perpetrators were arrested upon arrival at the Forest Preserve, but Conley was released shortly thereafter before ultimately being arrested.

Joseph Raschke provided testimony for the government regarding the cell tower locations and cell site information for the members of the conspiracy. Tracy Conley's phone records were never collected or analyzed by Raschke. FBI agent, Helen Dunn, testified as an expert. She identified the contents of the undercover van, including walkie-talkies and the guns that were located inside a toolbox. Trial Tr. at 652. Kathryn Knorr also testified as an expert, over objection, about the nature of fingerprints and latent fingerprints. Neither Conley's fingerprints nor his latent fingerprints were found on any of the guns or the toolbox. Trial Tr. at 639. Conley contends his convictions should be overturned due to a lack of sufficient evidence and rulings or errors that jeopardized his rights.

**Legal Standard**

Federal Rule of Criminal Procedure 29 provides that the Court on the defendant's motion may enter a judgment of acquittal for an offense lacking sufficient evidence to sustain the conviction. Fed. R. Crim. P. 29. When evaluating a defendant's motion for judgment of acquittal the court considers the evidence in the light most favorable to the prosecution, draws all reasonable inferences in its favor, and "affirms the conviction so long as any rational trier of fact could have found the defendant to have committed the essential elements of the crime." *United States v. Hassebrock*, 663 F.3d 906, 918 (7th Cir. 2011) (citing *United States v. Paneras*, 222 F.3d 406, 410 (7th Cir. 2000). The Court will overturn the guilty verdict "only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt." *United States v. Huddleston*, 593 F.3d 596, 601 (7th Cir. 2010).

Federal Rule of Criminal Procedure 33 allows the Court to vacate any judgment and grant a new trial if the interest of justice so requires. Fed. R. Crim. P. 33(a). Such motions are only appropriately granted if "substantial rights of the defendant have been jeopardized by errors or omissions during trial." *United States v. Kuzniar*, 881 F.2d 466, 470 (7th Cir. 1989). A defendant is entitled to a new trial only if there is a reasonable possibility that a trial error had a prejudicial effect upon the jury's verdict. *See United States v. Berry*, 92 F.3d 597, 600 (7th Cir. 1996).

**Discussion**

Conley moves for acquittal or, alternatively, a new trial on several bases: (1) that the government failed to prove each element of every count beyond a reasonable doubt, especially in light of the use of a stash house sting; (2) that the Court erred by denying Conley's request for discovery concerning the selective prosecution of similar stash house cases, by proceeding with a jury that did not reflect a fair cross-section of the community in violation of Conley's Sixth Amendment right, and by allowing Kathryn Knorr to testify because her testimony was irrelevant and unduly prejudicial; (4) that trial counsel was ineffective for urging Conley to waive his right to testify, for failing to seek exclusion

of Rashke's expert testimony, and for improperly alleging that Conley had knowledge in and participated in the conspiracy in his closing argument; (5) that the interest of justice requires that this Court overturn the conviction because it was secured through the use of a fictional stash house robbery that Conley had no predisposition to commit.

I. Sufficiency of the Evidence

*1. Weapons Charges*

Conley was convicted at trial of possession of a firearm in furtherance of a drug trafficking crime and unlawful possession of a firearm. In order to convict under § 924(c), the government must prove beyond a reasonable doubt that the defendant: (1) possessed a gun; and (2) used it in relation to a drug offense. *See United States v. Duran*, 407 F.3d 828, 840 (7th Cir. 2005). In order to obtain a conviction for felon-in-possession under §922(g), the government must establish beyond a reasonable doubt that (1) the defendant had a previous felony conviction, (2) the defendant possessed a firearm, and (3) the firearm had traveled in or affected interstate commerce. *United States v. Walls*, 225 F.3d 858, 864 (7th Cir. 2000). Conley argues that the government failed to present sufficient evidence to establish the possession element of each charge.

Possession of a weapon may be demonstrated through either actual or constructive possession. *United States v. Kitchen*, 57 F.3d 516, 520 (7th Cir. 1995). Actual possession is demonstrated if a person knowingly has direct physical control over a thing at a given time. *Id.* at 524 n.2. "Where that direct physical contact is lacking, a defendant may nevertheless have constructive possession if []he 'knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others.'" *United States v. Walls*, 225 F.3d 858, 864 (7th Cir. 2000) (quoting *United States v. Hunte*, 196 F.3d 687, 692 (7th Cir. 1999)).

Here, the evidence that Conley had actual or constructive possession of the weapons is meager. The government presented no evidence that he handled any weapons or was in a position to see any weapons. The testimony at trial from Anwar Trapp indicated that Conley was present for a discussion

4

of the robbery. Anwar Trapp and David Flowers dropped Conley off before going to collect supplies. Trial Tr. at 311-12. On November 1, 2011, when the would-be conspirators arrived at 6317 S. Mozart, David Flowers had hidden a gun inside a white work van. Anthony Adams also provided a gun. *Id.* at 472. Trapp testified that after Adams, Conley, and Rudy Space, got in the back of the white work van, Trapp wrapped a gun that he had obtained from a friend in his sweatshirt and handed it to Myreon, who was sitting in the drivers' seat of the van. Myreon took the gun and returned the sweatshirt. *Id.* at 316-18, 473, 74. All three guns were retrieved from the bottom of a tool box. There was no testimony or evidence presented establishing how the guns came to be in the tool box or whether Conley's vantage point in the back of the van permitted him to see the gun(s). Even the government's expert, Kathryn Knorr's testimony established that Conley's fingerprints were not found on any of the weapons. Without evidence establishing that Conley had a means of knowing of the presence of the weapons, his mere proximity to a closed tool box in a work van containing other tools and sundry items, would not sufficiently establish the requisite knowledge. *See United States v. Chairez*, 33 F.3d 823, 825 (7th Cir. 1994).

The only connection to the weapons that the Government is able to draw is under a *Pinkerton* theory. Conspiracy liability as defined in *Pinkerton* encompasses the criminal conduct of co-conspirators only to the extent that conduct was both (1) reasonably foreseeable to the defendant and (2) in furtherance of the criminal activity that the defendant agreed to jointly undertake. *See United States v. Salem*, 597 F.3d 877, 884-85 (7th Cir. 2010); *United States v. Jackson*, 527 Fed. Appx. 575, 577 (7th Cir. 2013). Trapp testified that Conley was present at a meeting where the robbery was discussed including the need for weapons based on the fact that Myreon expected three armed guards at the stash house. Trial Tr. at 308. Trapp's credibility as a witness, or lack thereof, as a co-conspirator and co-defendant was put before the jury, and the jury chose to believe him. As discussed below, the government met their burden on the conspiracy charges. Therefore, Conley can be held accountable for the guns acquired by his co-conspirators and put in the van with the intention that they be used in furtherance of

5

the armed robbery to obtain the cocaine regardless of the lack of direct evidence of Conley's knowledge of the presence of the weapons. *See United States v. Walker*, 673 F.3d 649, 655 (7th Cir. 2012).

*2. Conspiracy Charges*

The government also charged Conley with conspiracy to possess with intent to distribute five kilograms or more of mixtures containing cocaine, and attempt to possess with intent to distribute five kilograms or more of mixtures containing cocaine. Conley argues that the evidence was insufficient to support his conviction on these charges. This Court disagrees.

To convict a defendant of conspiracy to possess (or attempt to possess) with intent to distribute cocaine under 21 U.S.C. § 846, the government must establish: (1) the existence of an agreement between two or more persons to possess with intent to distribute cocaine; (2) that the defendant knew of the agreement; and (3) the defendant intended to join the agreement. *United States v. Taylor*, 600 F.3d 863, 868 (7th Cir. 2010) (citing *United States v. Billops*, 43 F.3d 281, 284 (7th Cir. 1994)).

The record evidence at trial showed that Conley was present at a meeting in Anthony Adams' basement at which a robbery was discussed. Anwar Trapp testified that at this meeting on November 1, 2011, Myreon told them about the robbery and explained that Adams and Conley would commit the actual robbery. Conley's own statement placed him at this meeting, even though he disputed the substance of the conversation. Trapp testified that at this meeting Myreon explained that a guy he knew had told him about a garage where 50 kilograms of cocaine were being stored by members of a Mexican cartel. Trial Tr. at 308. According to Trapp, Myreon explained that there would be three armed guards at the garage. *Id.* They decided that another person (Rudy Space) would be needed to carry out the robbery. *Id.* Although "mere association with conspirators, knowledge of a conspiracy and presence during conspiratorial discussions is not sufficient to convict a person of conspiracy," the government has to show that "the defendant was aware of the essential nature and scope of the enterprise and intended to participate in it." *United States v. Useni*, 516 F.3d 634, 646 (7th Cir. 2008). The evidence at trial showed that Conley took steps in apparent furtherance of the conspiracy. Conley showed up at the

6

house at the designated meeting time and entered the white work van. When the van arrived at the forest preserve, Conley got out of the white work van wearing blue gloves and walked towards the undercover van, whereupon he and the others were apprehended. Accordingly, this Court finds this evidence sufficient when viewed in the light most favorable to the government to support the conspiracy charges. In so finding this Court acknowledges the "nearly insurmountable hurdle" facing Conley. *See United States v. Spagnola*, 632 F.3d 981, 986 (7th Cir. 2011).

## II. New Trial

Alternatively, Conley moves for a new trial, arguing that verdict was so contrary to the weight of the evidence, taking into account the credibility of the witnesses, that the interests of justice require a new trial. *See United States v.* Washington, 184 F.3d 653, 657 (7th Cir. 1999). Having already determined that there was sufficient evidence to support the conviction this Court turns to Conley's argument that judicial errors substantially affected his rights. *See United States v. Kuzniar*, 881 F.2d 466, 470 (7th Cir. 1989).

*1. Trial Errors*

First, Conley argues that it was error to deny Conley's request for discovery concerning selective prosecution of similar stash house type cases. This Court notes that the Seventh Circuit Court of Appeals has referred to these stash house cases as "tawdry" "because the tired sting operation seems to be directed at unsophisticated, and perhaps desperate, defendants who easily snap at the bait put out for them by [the government]." *United States v. Lewis*, 641 F.3d 773, 777 (7th Cir. 2011). The Seventh Circuit's observation rings especially true since the "bait" involves robbing a drug cartel as opposed to robbing innocents. The instant case seems no different. The questions Conley raised are valid. However, this Court denied Conley's request for discovery concerning selective prosecution because he was not recruited by any government agent. He was not even recruited by the apparent spearhead of the conspiracy – Myreon Flowers, but instead by another recruit. Thus, there are no facts from which this Court can infer that Conley was a target of the government's sting operation and nothing to

7

indicate he was the subject of racial profiling. *See United States v. Barlow*, 310 F.3d 1007, 1010 (7th Cir. 2002).

Next, Conley asserts that Anwar Trapp's testimony was inadmissible hearsay for two reasons: that the government's proffered *Santiago* proffer did not refer to Anwar Trapp, and the government failed to meet their burden to show conspiracy. The *Santiago* proffer set forth the expected testimony of co-conspirators, that it was David Flowers instead of Anwar Trapp that the government expected to call is harmless because the testimony offered through Anwar Trapp was not materially different. There was evidence of the conspiracy and the statements were made in furtherance of the conspiracy. *See United States v. Leonard-Allen,* 739 F.3d 948, 955 (7th Cir. 2013). Moreover, there was no objection at trial to Anwar Trapp's testimony.

Conley also asserts that it was error to allow the expert testimony of Kathryn Knorr because her testimony is irrelevant and unduly prejudicial. The Seventh Circuit has expressly rejected the argument that testimony from a fingerprint expert on the lack of fingerprints is irrelevant, *United States v. Glover*, 479 F.3d 511, 517-19 (7th Cir. 2007). However, even if this Court found the testimony prejudicial, the government connected Conley to the weapons through a *Pinkerton* theory and thus any error in the admission of the testimony would be harmless.

*2. Ineffective Assistance of Counsel*

Additionally, Conley argues that his trial counsel was ineffective for several reasons: counsel urged Conley to waive his right to testify; counsel failed to file a motion *in limine* to exclude Raschke's expert testimony; and, that counsel improperly alleged that Conley had knowledge of and participated in the conspiracy in his closing argument. In order to prevail on an ineffective assistance of counsel claim, a defendant must show that his attorney's performance was deficient and that he was prejudiced by that deficient performance. *Kitchen v. United States*, 227 F.3d 1014, 1019-20 (7th Cir. 2000). "To reflect the wide range of competent legal strategies and to avoid the pitfalls of review in hindsight, our review of an attorney's performance is highly deferential and reflects a strong presumption that

counsel's conduct falls within the wide range of reasonable professional assistance." *Groves v. United States*, 755 F.3d 588, 591 (7th Cir. 2014) (quoting *Yu Tian Li v. United States*, 648 F.3d 524, 527-28 (7th Cir. 2011)).

Conley's trial counsel urged him not to testify in an effort to keep Conley's criminal history out of evidence, but agreed to a stipulation that Conley had been convicted of a felony prior to November 1, 2011. The decision whether to testify is ultimately the defendant's alone. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). The Court admonished Conley of his right to testify on his own behalf as well as his right not to testify. Trial Tr. 670-71. Furthermore, courts generally do not second-guess trial tactics so long as they are rationally based. *Mertz v. Williams*, 771 F.3d 1035, 1042 (7th Cir. 2014). "[T]he decision not to place the defendant on the stand is a classic example of what might be considered sound trial strategy." *United States v. Norwood*, 798 F.2d 1094, 1100 (7th Cir. 1986).

Here, the Court granted the government's motion *in limine* seeking to allow cross-examination of Conley on certain felony convictions, including weapons and narcotics offenses if Conley chose to testify. Accordingly, this Court finds that it was sound trial strategy for trial counsel to advise Conley not to testify thereby keeping out the detail and substance of his criminal history.

Conley's next argument regarding the expert testimony of Joseph Raschke is equally within the realm of trial strategy. The government offered the testimony regarding the cell site evidence to demonstrate the locations of various conspirators at particular times. Conley's records were never collected or analyzed. The fact that Conley's cell records were never sought or analyzed could have benefitted Conley, therefore the failure to seek to exclude has a rational basis in trial strategy.

Lastly, the issue of whether trial counsel insinuated that Conley was part of the conspiracy during closing argument belied by the trial record. Counsel argued that Conley was not a part of the conspiracy of the Flowers brothers, Anwar Trapp, Duane Jones, Anthony Adams, and Rudy Space. The record shows that he tried to argue that the conspirators considered Conley an effective dupe, who they could use as a human shield with the secure knowledge that he would be afraid to talk because they

knew where he lived and could harm him. *See* Trial Tr. at 719. Defense counsel's argument does not necessarily support a conclusion that Conley joined a conspiracy. Accordingly, this Court finds that Conley fails to meet the burden under *Strickland* to demonstrate ineffective assistance of trial counsel.

**Conclusion**

Conley asserts that justice demands acquittal or a new trial. Indeed, the Court questions the wisdom and purpose of expending the level of law enforcement resources and judicial time and effort in this prosecution. Not only does this Court agree with the Seventh Circuit's opinion that the fictional stash house stings are tawdry, this Court would go further and say the stash houses are, in most cases, an unproductive set up targeting poor people of color. While the Court may find the government's tactics of questionable value, they do not rise to the level necessary to overturn the jury's verdict in this case. After much consideration, time, reflection and review of the parties' arguments and the trial record, this Court denies defendant Tracy Conley's Motion for Acquittal or a New Trial.

IT IS SO ORDERED.

Date:

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge